UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| INTERCONTINENTAL TERMINALS | § | |
| COMPANY, LLC, | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION 4:18-cv-3113 |
| | § | |
| | § | ADMIRALTY |
| AFRAMAX RIVER MARINE CO., | § | |
| EXECUTIVE SHIP MANAGEMENT | § | |
| PTE LTD. M/T AFRAMAX RIVER | § | |
| Defendants. | § | |
| | § | |

**PLAINTIFF'S OBJECTION AND RESPONSE TO
DEFENDANTS' OPPOSED MOTION TO SUBSTITUTE COUNSEL**

COMES NOW, Plaintiff, INTERCONTINENTAL TERMINALS COMPANY, LLC (hereinafter "ITC" or "Plaintiff"), and files this Objection and Response to Defendants' Opposed Motion to Substitute Counsel. The attorneys now seeking to represent Defendants were partners and associates at the law firm that previously represented Plaintiff in this very same incident. Therefore, Plaintiff respectfully shows the following:

**I.**
**FACTUAL BACKGROUND**

1.      ITC owns and operates a terminal (the "Facility") located on the south side of the Houston Ship Channel, at the mouth of Tucker Bayou, which is comprised of several tanker berths and barge docks. Doc. No. 3. Plaintiff also owns two (2) mooring dolphins near the Facility. Doc. No. 3.

2.      The subject incident occurred on or about September 6, 2016, in the Houston Ship Channel near the Facility. Doc. No. 3. The M/T AFRAMAX RIVER departed from the Houston

Fuel Oil Dock.  Doc. No. 3.  While en route to its destination, the ship's astern movement failed to slow, and the engine was not responding.  Doc. No. 3.  As a result, the M/T AFRAMAX RIVER failed to maintain its intended course, causing an allision with ITC's mooring dolphins.  Doc. No. 3.  The mooring dolphins were severely damaged as a result.  Doc. No. 3.

## II.
### PROCEDURAL HISTORY

3.      After the incident occurred, but prior to the filing of the subject lawsuit, ITC retained the law firm Fowler Rodriguez L.L.P. ("Fowler Rodriguez") to oversee the arrest proceedings between ITC and the M/T AFRAMAX RIVER (the parties agreed to not arrest the vessel). (Pl. Exhibit "A", [Jeansonne Aff. ¶ 2-4].)  Tim Strickland ("Strickland"), a partner at Fowler Rodriguez at the time, was hired by ITC to represent it in connection with the allision. *Id*. at 4-5.  In the course of his representation of ITC, Strickland assisted in the investigation of the incident, conducted interviews with witnesses, attended the USCG hearing, met with the claims adjuster, received confidential information from ITC, and negotiated the execution of the Letter of Undertaking for the incident arising from the above-styled lawsuit.  (Pl. Exhibit "B", [Strickland Aff. ¶ 4].)  ITC later made an insurance claim for the damage to the mooring dolphins.  ITC's insurers retained Donato, Minx Brown & Pool, PC. ("DMBP"), to investigate subrogation.  ITC thereafter retained DMBP and no longer required the services of attorney Strickland or the firm of Fowler Rodriquez.

4.      In 2018, Strickland left the law firm Fowler Rodriguez.  However, during Strickland's representation of ITC, Antonio J. Rodriguez ("Rodriguez"), Michael A. Harowski ("Harowski"), and Ashley E. Bane ("Bane") were all partners and/or associates employed at the same firm – Fowler Rodriguez. (Pl. Exhibit "B", [Strickland Aff. ¶ 6].)  Furthermore, during the course and scope of Strickland's representation of ITC, privileged case files, including

communications and documents were stored on FileSite – a system accessible by any other attorney employed at the Fowler Rodriguez firm. (Pl. Exhibit "B", [Strickland Aff. ¶ 7].)

5.       In late 2018, Fowler Rodriguez began winding up, and Rodriguez, Harowski, and Bane all joined the firm Wilson Elser Moskowitz Edelman & Dicker L.L.P. ("Wilson Elser") – said windup being effective January 1, 2019.  On January 7, 2019, Defendants filed their Opposed Motion to Substitute Counsel of Record, seeking to substitute Rodriguez, Harowski, and Bane as counsel in this matter – the same attorneys who worked at Fowler Rodriguez when it represented ITC on this incident.  Doc. No. 16.

6.       As such, a clear conflict of interest exists which should bar Defendants' Motion to Substitute Counsel.   The conflict arises out of Strickland's and Fowler Rodriguez's prior representation of ITC.   Though Strickland did not accompany his fellow Fowler Rodriguez attorneys in joining Wilson Elser, he received confidential information regarding the case; information which remains in possession of the Fowler Rodriguez firm.  On January 18, 2019, ITC requested a copy of its file from Fowler Rodriguez and has yet to receive a response.  (Pl. Exhibit "A", [Jeansonne Aff. ¶ 8].)  Essentially, Rodriguez, Harowski and Bane are asking this Court permission to represent Defendants adverse to ITC after having had access to and maintaining possession of ITC's case file in the *same matter*.   This is prejudicial to ITC and presents much more than simply an appearance of impropriety.  Allowing these attorneys to represent Defendants is not supported by any legal or equitable theory and will greatly prejudice ITC's ability to litigate this case and achieve a just outcome.  Should this substitution be allowed, any outcome would henceforth be clouded in suspicion, and cause irreparable damage to the attorney-client privilege which forms a foundation of the legal profession.

### III.
### ARGUMENTS & AUTHORITIES

7.      When considering disqualifying an attorney, courts should first look to "the local rules promulgated by the local court itself." *U.S. Fire Ins.*, 50 F.3d at 1312. The Local Rules of the Southern District of Texas provide that "the minimum standard of practice shall be the Texas Disciplinary Rules of Professional Conduct" (Texas Rules), and that violations of the Texas Rules shall be grounds for disciplinary action. S.D. Tex. Local R. App. A, R. 1A & 1B.  As such, we look to those rules for guidance on this issue.

8.      Rule 1.09 of the Texas Rules of Professional Conduct addresses the scenario before the Court.  It provides, in pertinent part, as follows:

> When the association of a lawyer with a firm has terminated, the lawyers who were then associated with that lawyer shall not knowingly represent a client if the lawyer whose association with that firm has terminated would be prohibited from doing so by paragraph (a)(1) or if the representation in reasonable probability will involve a violation of Rule 1.05.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(c).  Here, the representation at issue "in reasonable probability will involve a violation of Rule 1.05." *Id*.  Rule 1.05 states "confidential information" encompasses *both* "privileged information" and "unprivileged client information."  TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05(a).  The Rule defines "privileged information" as client information protected by the attorney-client privilege and defines "unprivileged client information" as all "information relating to a client or furnished by the client, other than privileged information, acquired by the lawyer during the course of or by reason of the representation of the client." *Id*.  Further, "a lawyer shall not knowingly: . . . use confidential information of a former client to the disadvantage of the former client after the representation is concluded unless the former client consents after consultation or the confidential information has become generally known." *Id*. at (b)(3).

9.      Further, Comment 6 to Rule 1.09 provides:

> Paragraph (c) [of Rule 1.09, cited above,] addresses the situation of former partners or associates of a lawyer who once had represented a client when the relationship between the former partners or associates and the lawyer has been terminated.  In that situation, the former partners or associates are prohibited from . . . undertaking representation which in reasonable probability will involve a violation of Rule 1.05.  Such a violation could occur, for example, *when the former partners or associates retained materials in their files from the earlier representation of the client that, if disclosed or used in connection with the subsequent representation, would violate Rule 1.05(b)(1) or (b)(3).*

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09, Cmt. 6 (emphasis added).  The Comment illustrates the framework of the present issue, which is evidenced by tracing the Comment's language: former partners or associates (Rodriguez, Harowski and Bane) of a lawyer (Strickland) who once represented a client (ITC), where the relationship between the former partners/associates and the lawyer has been terminated.  *Id.*  Thus, Rodriguez, Harowski, Bane and the entire Wilson Elser firm are prohibited from undertaking representation of Defendants because there is a reasonable probability such representation will violate Rule 1.05's prohibition of disclosing confidential information.

10.     If Rodriguez, Harowski, Bane and Strickland were still employed by the same firm, Rule 1.09(b) would apply, and Strickland's conflict would be imputed to Rodriguez, Harowski and Bane, prohibiting any one of them from representing Defendants due to Strickland's prior representation of ITC.  TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(b).  However, because Strickland no longer works with Rodriguez, Harowski and Bane, the issue becomes whether Rodriguez, Harowski and Bane are disqualified by imputed knowledge, despite the fact none of them personally represented ITC.  Here, they must be disqualified because they maintained and potentially still have access to ITC's case file, which they retained even after Strickland left Fowler Rodriguez.

11.     Current Wilson Elser attorneys Rodriguez, Harowski and Bane retained ITC's case file materials after Strickland left the firm, and despite the windup, could potentially access materials obtained by way of Fowler Rodriguez's prior representation of ITC in this matter.  These materials, if disclosed or used in this matter, would violate Rule 1.05(b)(3).  This is in addition to the issue that they may have already obtained confidential information while they were employed at Fowler Rodriguez during Strickland's representation.  Mark Jeansonne, Plaintiff ITC's Chief Financial Officer and Chief Compliance Officer, recently requested that Fowler Rodriguez provide the file related to its representation of ITC in regards to the incident.  (Pl. Exhibit "A", [Jeansonne Aff. ¶ 8].)  That request has gone ignored. *Id*.  The file in question is "confidential information" because any documents or materials related to Fowler Rodriguez's prior representation of ITC fall under either (1) information protected by attorney-client privilege ("privileged information") or (2) information related to or furnished by the client acquired by the lawyer through representation of the client ("unprivileged client information").  TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05(a). Despite requesting its case file from Fowler Rodriguez, ITC has yet to receive it.

12.     Fowler Rodriguez is a Louisiana limited liability partnership.  (Pl. Exhibit "C"; [Certificate of Information].)  The entity is still in existence and active, and Antonio Rodriguez is listed on formation documents as both an officer and partner of the organization. *Id*.  Whether or not Rodriguez left the firm for Wilson Elser, as an officer and partner of Fowler Rodriguez which is still in existence as of the date of this filing, he retains possession of and potential access to the case file.   As such, this possession of such confidential information must preclude Wilson Elser from representing Defendants.  *Id*.; *see* Rule 1.09, Cmt. 6.

13.     In analyzing conflict of interest issues in the federal setting, Texas courts apply "federal law which may be informed by state and national standards." *Carbo Ceramics, Inc. v.*

*Norton-Alcoa Proppants*, 155 F.R.D. 158, 161 (N.D. Tex. 1994).  To resolve issues of prior representation, the Fifth Circuit applies a substantial relationship test: "[a] party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations."  *Id*.

14.     The Texas Supreme Court has held the movant must "establish a preponderance of the facts indicating a substantial relation between the two representations."  *NCNB Texas Nat'l Bank v. Coker*, 765 S.W.2d 398, 400 (Tex.1989) (orig. proceeding).    Further:

> The moving party must prove the existence of a prior attorney-client relationship in which the factual matters involved were so related to the facts in the pending litigation that it creates a genuine threat that confidences revealed to his former counsel will be divulged to his present adversary. Sustaining this burden requires evidence of specific similarities capable of being recited in the disqualification order. *If this burden can be met, the moving party is entitled to a conclusive presumption that confidences and secrets were imparted to the former attorney.*

*Id*. (emphasis added).  Here, the "substantial relationship" test  is  clearly  satisfied.    The  two representations at issue are not merely related: they arise out of *the same matter*.

15.     In a similar incident, the Fifth Circuit held that the moving party's satisfaction of the substantial relationship test alone does not necessarily create an "irrebuttable presumption that attorneys possess confidential information even after departing from a firm . . . ."  *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 302 (5th Cir. 2009) (holding the trial court erred in declining to consider evidence that attorney did not obtain confidential information regarding former client such that any imputed disqualification should have ended when the attorney left the disqualified firm).  In that case, the Fifth Circuit followed Comment 6 to Model Rule 1.9(b) which states that the "[a]pplication of paragraph (b) depends on a situation's particular facts," and places

the burden of proof upon "the firm [or attorney] whose disqualification is sought." Model Rules of Prof'l Conduct R. 1.9 cmt. 6.  Thus, once ITC establishes a substantial relationship exists, the burden is on Rodriguez, Harowski and Bane to prove they did not "acquire confidential information about the former firm's client or personally represented the former client . . . [otherwise, they] remain under imputed disqualification" by virtue of both their prior relationship with Strickland while working at Fowler Rodriguez and their possession of confidential information related to ITC.  *Id*. at 301.

16.    The Fifth Circuit's approach to ethical issues has remained "sensitive to preventing conflicts of interest." *Id*. at 611.  When considering whether to disqualify an attorney, a court must decide if the conflict has (1) the appearance of impropriety in general or (2) the possibility that a specific impropriety will occur, and (3) whether the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case. *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001).  Thus, the prior representation of ITC by Fowler Rodriquez, coupled with Rodriguez, Harowski and Bane's  potential access and control of ITC's case file, should preclude the granting of Defendant's Opposed Motion to Substitute.

### IV.
#### CONCLUSION AND PRAYER

For the foregoing reasons, allowing the proposed substitution of counsel would be prejudicial to ITC, would bring at the minimum an appearance of impropriety, and would cause irreparable harm to the principles of the attorney-client privilege.  Such substitution would not be in conformance with this Court's Rules regarding professional conduct and presents a conflict of interest that cannot be ignored. Accordingly, ITC prays that Defendants' Opposed Motion to

Substitute Counsel be denied, and for such other and further relief to which it may be justly entitled.

Dated this 29th day of January, 2019.

Respectfully submitted,

**DONATO, MINX, BROWN & POOL, P.C**

By:     _/s/ Mark R. Pickering_
         Brook F. Minx
         SBN 00789905
         Email: bminx@donatominxbrown.com
         Mark R. Pickering
         SBN 00795591
         Email: mpickering@donatominxbrown.com
         3200 Southwest Freeway, Suite 2300
         Houston, Texas 77027-7525
         (713) 877-1112
         (713) 877-1138 Fax

         LEAD COUNSEL FOR PLAINTIFF
         INTERCONTINENTAL TERMINALS
         COMPANY, LLC

## **CERTIFICATE OF SERVICE**

On this 29th day of January 2019, I hereby certify that I electronically filed the foregoing document with the Clerk for the Court using CM/ECF, and that a copy of the document was forwarded to all counsel of record.

/s/ Mark R. Pickering
Mark R. Pickering