IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **INTERCONTINENTAL TERMINALS CORPORATION, LLC** <br> **Plaintiff,** <br><br> v. <br><br> **AFRAMAX RIVER MARINE CO., EXECUTIVE SHIP MANAGEMENT PTE LTD., M/T AFRAMAX RIVER** <br> **Defendants / Third-Party Plaintiffs,** <br><br> v. <br><br> **SUDERMAN & YOUNG TOWING COMPANY, G&H TOWING COMPANY And SEABULK TOWING SERVICES, INC.** <br> **Third-Party Defendants.** | § § § § § § § § § § § § § § § § § § § § | **C.A. NO. 4:18-cv-3113** <br> **RULE 9(h) - ADMIRALTY** |

### AFRAMAX RIVER'S BRIEF ON TUG INTERESTS' DUTY TO SUPPLEMENT DISCOVERY AND OTHER OUTSTANDING DISCOVERY ISSUES

Aframax River Marine Co., owner of the MT AFRAMAX RIVER, and Executive Ship Management Pte. Ltd. (hereinafter collectively "Aframax Interests"), submit this brief in support of Aframax Interests' position that: 1) Third-Party Defendants Suderman & Young Towing Company and G&H Towing Company (hereinafter collectively "Tug Interests") are under an ongoing duty to supplement their incomplete responses to Aframax Interests' discovery requests regardless of the discovery deadline;  2) the parties previously agreed that both Aframax Interests and Tug Interests would each conduct a Rule 30(b)(6) deposition; 3) Aframax Interests' expert witnesses must amend their previous expert reports based on new evidence that was received after their initial reports were authored; and 4) the scheduling order should be modified under Fed. R. Civ. P. Rule 16 so that essential evidence needed for a just adjudication is heard by the Court.

1

**I.     STATUS CONFERENCE HELD BY JUDGE MILLER ON DECEMBER 2, 2020**

On November 11, 2020, approximately ten days after undersigned counsel took over the representation of Aframax Interests in this case, Tug Interests requested a status conference to address "recent scheduling issues that have arisen in the case as a result of ARM's appointing its third[1] counsel of record, Messrs. Gaitas & Chalos, P.C." (Tug Interests November 11, 2020 letter, p. 1). At the time Tug Interests made its November 11th request, discovery had just ended, and undersigned counsel had not yet received the complete case file from Wilson Elser, Aframax Interests' previous counsel, which contained over sixteen thousand pages of documents.

Nonetheless, Aframax Interests responded to the Tug Interests' November 11, 2020 letter on November 13, 2020 the best they could and respectfully requested the Court time to allow undersigned counsel to familiarize themselves with the case file not yet received from Wilson Elser. It was also brought to the Court's attention that undersigned counsel learned that Tug Interests may be withholding electronic chart display and information system ("ECDIS") records and investigation reports. The Court scheduled a status conference on December 2, 2020.

Before the December 2, 2020 status conference, on November 10, 2020, counsel for Tug Interests sent an e-mail to undersigned counsel stating that "Tug Interests have no ECDIS records, as neither vessel possessed an ECDIS" and "…we provided a copy of the February 22, 2018 NTSB report concerning the incident. Tug Interests have no other investigation reports in this matter

---

[1] Tug Interests place heavy emphasis that undersigned counsel is Aframax Interests' third counsel. This should not be a factor when deciding these issues. The lead attorney first representing Aframax Interests in this case, of the firm Eastham, Watson, Dale & Forney, retired from the practice of law during the pendency of this lawsuit, which forced Aframax Interests to switch counsel to Wilson Elser. A conflict of interest subsequently arose between Wilson Elser and Aframax Interests due to Wilson Elser's representation of another client adverse to Aframax Interests, which resulted in Wilson Elser having to withdraw from this case. Undersigned counsel was instructed by Aframax Interests on October 26, 2020. Aframax Interests should not be penalized because their previous counsel had a duty to withdraw.

(internal or otherwise), aside from Aframax Investigation Report and the NTSB Report." (emphasis added). On November 15, 2020, counsel for Tug Interests again sent an e-mail to undersigned counsel stating, "…in response to 2019 and 2020 discovery requesting copies of ECDIS records and investigation reports we responded that the G&H tugs were not equipped with ECDIS and that G&H has no investigation reports, with the exception of the NTSB report[2] investigation and the ARM investigation (which Plaintiffs have)." (emphasis added). On November 19, 2020, opposing counsel again e-mailed undersigned counsel and stated, "As we have reconfirmed, Tug Interests have no accident investigation reports beyond those previously mentioned (i.e., the NTSB Report and the Aframax Incident Investigation Report)." (emphasis added). Undersigned counsel did not believe this to be true as such records are required to be maintained by the Tug Interests under the Code of Federal Regulations and in accordance with their Safety Management System ("SMS").

At the December 2, 2020 status conference, Aframax Interests argued that Tug Interests may be withholding ECDIS records and investigation reports that need to be produced to Aframax Interests. At the conference, opposing counsel unequivocally represented to the Court that neither assist tug involved in the allision were equipped with ECDIS and that Tug Interests have no investigation reports except for the NTSB report. In response, undersigned counsel suggested that a Rule 30(b)(6) deposition would be helpful to determine whether these documents, in fact, exist or not, as such documents are required to be maintained. Tug Interests vigorously opposed Aframax Interests' request to depose the Tug Interests' corporate representative. However, at the time of the status conference, undersigned counsel was unaware that opposing counsel and

---

[2] As noted at the March 18, 2021 discovery conference, Aframax Interests have begun preparing an appeal to the NTSB to reopen its investigation and consider the withheld investigation report and additional evidence which contradicts the Tug Interests' "general narrative."

3

Aframax Interests' previous counsel had an agreement to take Rule 30(b)(6) depositions in this case. Opposing counsel failed to mention this to undersigned counsel or the Court. (More on this below).

Judge Miller ultimately decided that: 1) since opposing counsel has represented that the ECDIS records and investigation reports do not exist, Aframax Interests must take them at their word; and 2) the discovery deadline would be extended only to complete expert witness depositions and dispositive motions, with all other deadlines to remain in place. <u>In closing, Judge Miller informed the parties that if discovery issues were identified in the course of the expert witness depositions, the Court would consider an application for specific discovery by Aframax Interests</u>. (emphasis added).

It is now clear that opposing counsel, whether accidentally or deliberately, misled Aframax Interests and the Court by representing that Tug Interests did not have any investigation reports. That is, undersigned counsel discovered that Tug Interests were, in fact, withholding an investigation report[3] from Aframax Interests, despite opposing counsel's numerous representations that such a report did not exist. As detailed in Aframax Interests' letters to the Court, Tug Interests produced an "Operational/Incident Report Form" detailing the major breakdown of the JESS NEWTON's (assist tug) towing winch while towing the AFRAMAX RIVER, causing her to allide with a mooring dolphin in the Port of Houston. It should be noted that this document is new evidence that reports the breakdown of the JESS NEWTON's winch at approximately two minutes

---

[3] While continuing to review the case file on January 30, 2021, undersigned counsel found opposing counsel's "D.I.S. List" buried deep in a folder titled "TugCrew-Drug+Alcohol Testing". Opposing Counsel's "D.I.S. List" referenced documents received from their clients during the infancy of this case titled "JESS NEWTON 'Mechanical Failure' Documents", which were withheld from initial disclosures and not produced to Aframax Interests until February 2, 2021, only after Aframax Interests demanded they be produced.

before the allision occurred and reports the location of the incident to be on "the port 1/4 of the ship" while assisting the AFRAMAX RIVER.

[G & H Towing Company Operational/Incident Report Form showing: Date of Incident: 9-06-2016; Time of Incident: 0004; Time OpCen notified: 0026; Watch Supervisor notified: MES; Name of Submitter/Affected person: Stanley Reiman; Name of Master/Supervisor: Charles Arduengo; Location of Incident: Port 1/4 of Ship @ ITC 7/8; Lat: Peninsula Point; Tug Involved: Jess Newton; Job Description: Sailing; Vessel Assisted: Aframax River; Other Tugs Assisting: Gasparilla]

It should also be noted that this investigation report provides "Details of what happened"; "What was the root-cause of the incident"; "How was the incident corrected"; and a "Pre-evolution GAR" score. Again, these items are mandated under 33 CFR § 96.250(i) and the International Safety Management Code.

[Second portion of G & H Towing Company Operational/Incident Report Form showing: Pre-evolution GAR: 2? of 60; Cause of Incident: Equipment failure; Result of Incident: Tug out of service; Narrative: "While winching in the line, it was observed that the wk. winch was running a little slow. Shortly after that, the low level alarm sounded on the oil tank for the winch hydraulics. I went to the Engine room and found hydraulic oil leaking from the overhead by the winch controls. The winch was shutdown and oil pads were placed on the Deck plates to start absorbing the oil."]

Ironically, not only is this Operational/Incident Report Form that was withheld from Aframax Interests for almost two years detrimental to the Tug Interests' defense, but it is also precisely the type of investigation report that Tug Interests repeatedly represented did not exist as noted above. Tug Interests have tried to downplay the importance of this withheld investigation report that was

5

produced well after the discovery deadline, and the fact that it is entirely new evidence. Tug Interests allege that this is not new evidence because Aframax Interests knew about a winch breakdown onboard the JESS NEWTON as witness statements of the JESS NEWTON's crew that were produced in July 2019 reference a leaking o-ring on the winch hydraulic system. Moreover, the crewmember witness statements allege the breakdown of the winch occurred after the towage of the AFRAMAX RIVER. Indeed, Mr. Herschaft acknowledges as much in opposing counsel's February 2, 2021 letter to undersigned counsel producing the withheld investigation report (referred to as "The Form" in Mr. Herschaft's letter):

> The Form otherwise tracks the general narrative that has been in ARM's possession since the beginning of this case, i.e. that the JESS NEWTON winch malfunction occurred *after* the incident when the Tug was hauling in the burnt tow line to escape the fire that ignited *after* the AFRAMAX RIVER allied with the dolphin.

However, it is patently untrue that the withheld investigation report tracks the "general narrative" that the JESS NEWTON winch malfunction occurred after the incident when the Tug was allegedly hauling in the burnt tow line. To the contrary, the withheld investigation report changes the entire framework of this case. As can be seen in the above snapshots of the withheld investigation report, it cannot be disputed that in the report, the chief engineer places the breakdown of the JESS NEWTON's winch **before**[4] the AFRAMAX RIVER allied with the mooring dolphin; that the withheld investigation report places the location of the incident on the **"port 1/4 of the ship @ ITC 7/8"**; and that the withheld investigation report does not as much as mention a burnt tow line, or that the "Tug was hauling in the burnt tow line to escape the fire that ignited *after* the AFRMAX RIVER allied [sic] with the dolphin", as opposing counsel incorrectly contends. This withheld investigation report is new evidence and information that directly contradicts the Tug Interests "general narrative" and was entirely unknown to Aframax Interests

---

[4] It is undisputed that the allision with the mooring dolphin occurred after 00:04 on September 6, 2016.

during the pendency of this case. For Tug Interests to argue otherwise is simply an attempt to further mislead the Court and Aframax Interests.

Therefore, Aframax Interests respectfully submit that Judge Miller did not consider this specific discovery issue at the December 2, 2020 status conference (as it was entirely unknown to Aframax Interests and the Court at the time of the hearing), and this improperly withheld investigation report is entirely new evidence. Tug Interests should not be rewarded for failing to properly engage in discovery.

## II.     TUG INTERESTS' DUTY TO SUPPLEMENT DISCOVERY

The discovery deadline in this case was November 1, 2020. Despite this, under Fed. R. Civ. P. 26, Tug Interests are under a continuing duty to supplement their discovery responses with any new information that would cause its existing discovery responses to be inaccurate or incomplete. *Sky Techs. LLC v. Sap AG*, 2010 U.S. Dist. LEXIS 143204 (E.D. Tex. Aug. 3, 2010); *Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994). This is a duty that does not end when discovery ends. *Id.* "An important purpose of discovery is to reveal what evidence the opposing party has, thereby helping determine which facts are undisputed—perhaps paving the way for a summary judgment motion—and which facts must be resolved at trial." *Comput. Task Grp., Inc. v. Brotby*, 364 F.3d 1112, 1117 (9th Cir. 2004).

Tug Interests have failed, refused and/or neglected to supplement their discovery responses in accordance with Fed. R. Civ. P. 26, despite withholding an investigation report required under their SMS that makes their previous discovery responses inaccurate and incomplete as noted in the following:

9. Please produce a copy of any incident reports produced as a result of the Incident.

**RESPONSE: Please see the documents Bates numbered G&H00018-26**

10. Please produce documents relating to any root cause analysis conducted as a result of the Incident.

**RESPONSE: The NTSB report of investigation into this matter is publicly available at** https://www.ntsb.gov/investigations/accidentreports/pages/MAB1806.aspx.

(Tug Interests' Objections and Responses to Aframax River Marine Co.'s First Interrogatories and First Request for Production of Documents, Request No. 9 and Request No. 10)

6. Please produce any and all defect reports and list of defects at the time of the incident for the JESS NEWTON and GASPIRILLA.

**RESPONSE: Tug Interests object to this request as vague and ambiguous. Subject to said objection, upon information and belief, none.**

(Tug Interests' Responses to Aframax River Marine Co.'s Second Request for Production of Documents, Request No. 6)

Tug Interests argue that discovery is over and therefore they do not need to supplement their discovery responses past the discovery deadline. They further contend that Aframax Interests are out of time to file a motion to compel them to make complete responses to Aframax Interests' discovery requests.

In *Express One Int'l, Inc. v. Sochata*, 2001 U.S. Dist. LEXIS 27369 at *3 (N.D. Tex. Apr. 27, 2001), the court held "There is no cut-off date for filing motions to compel in this lawsuit; and simply because discovery has closed does not logically preclude the filing of a motion to compel. Otherwise, parties could wait until the last day of discovery to file objections to legitimate discovery and claim the discovery cannot be compelled because discovery has ended." When deciding whether to address a motion to compel filed after the discovery deadline, courts have considered the following factors:

> (1) the length of time since the expiration of the deadline, (2) the length of time that the moving party has known about the discovery, (3) whether the discovery deadline has been extended, (4) the explanation for the tardiness or delay, (5) whether dispositive motions have been scheduled or filed, (7) the age of the case,

(8) any prejudice to the party from whom late discovery was sought, and (9) disruption of the court's schedule.

*Gonzalez v. Harlingen Consol. Indep. Sch. Dist.*, 2015 U.S. Dist. LEXIS 183144 (S.D. Tex. Oct. 22, 2015).

Thus, Aframax Interests should not be foreclosed from being permitted to seek an appropriate remedy to obtain complete discovery responses from Tug Interests that they objected to and either partially produced responsive documents or improperly withheld documents altogether. It is respectfully submitted that Aframax Interests are not asking for any new discovery, but rather they are asking Tug Interests to make complete responses to requests that were timely served.

### III. THE PARTIES HAD AN AGREEMENT THAT RULE 30(b)(6) DEPOSITIONS WOULD BE CONDUCTED IN THIS CASE

At the time of the December 2, 2020 status conference, undersigned counsel was unaware that opposing counsel and Aframax Interests' previous counsel had agreed that the parties would each conduct a Rule 30(b)(6) deposition in this case, and opposing counsel failed to inform the Court of this fact. In reviewing the correspondence between opposing counsel and Wilson Elser, Rule 30(b)(6) depositions were an ongoing discussion. As late as September 21, 2020 and October 12, 2020, the parties were discussing the scheduling of Aframax Interests' Rule 30(b)(6) deposition. In this regard, on September 21, 2020, opposing counsel sent an e-mail to Wilson Elser stating "as soon as we have your 30(b)(6) topics we can determine the appropriate corporate deponents at G&H and S&Y." On October 12, 2020, in an e-mail to Wilson Elser, opposing counsel requested Aframax Interests to "circulate your 30(b)(6) topics for G&H, we will revert asap with the appropriate corporate deponent(s)." *See* Declaration of attorney Michael Harowski, Aframax Interests predecessor counsel attached hereto as EXHIBIT 1.

On October 27, 2020, three days before the discovery deadline, and one day after undersigned counsel was instructed in this case, opposing counsel wrote and e-mail to undersigned counsel regarding the scheduling of the expert witness depositions. In this e-mail, Mr. Herschaft acknowledged that "Mr. Harowski had referenced that Aframax was interested in potentially scheduling G&H's corporate deposition…" and that "G&H Interests will agree to a prompt rescheduling of the [expert witness] depositions referenced above, but will object to any other discovery occurring in this case under the circumstances." Because the parties had already agreed that Rule 30(b)(6) depositions would be conducted in this case, Tug Interests would not be prejudiced by a Rule 30(b)(6) deposition occurring a few months later than originally anticipated. Moreover, the belated disclosure of the improperly withheld investigation report that completely contradicts the Tug Interests' "general narrative" regarding the breakdown of the assist tugs' winches warrants a Rule 30(b)(6) deposition. Tug Interests should be required to honor their agreement with Aframax Interests' predecessor counsel and should not be permitted to use Aframax Interests' necessary change in counsel to their benefit and to the detriment of their opposition.

## IV. AFRAMAX INTERESTS' EXPERT WITNESSES MUST AMEND THEIR EXPERT REPORTS

Aframax Interests have designated three expert witnesses in this case; Professor Kostas Spyrou, Aframax's expert on hydrodynamics, Mr. Michail Chourdakis, Aframax's technical expert on tugs, and Mr. Doug Torborg, Aframax's master mariner expert. Professor Spyrou was deposed on January 13, 2021 and does not need to be deposed again.

Mr. Chourdakis prepared his initial expert witness report on July 17, 2020. Mr. Torborg also prepared his initial expert witness report on July 17, 2020. However, on October 26, 2020, Tug Interests produced in response to Plaintiff's second request for production of documents,

10

previously unseen and unproduced records which showed that both assist tugs, the JESS NEWTON and the GASPARILLA, had experienced serious problems with their respective towing winches on the date of the incident, September 6, 2016. According to these records, the winch of the GASPARILLA had been out of working order since the last week of August 2016 and remained unrepaired and unavailable through the fourth week of September 2016. Moreover, Tug Interests produced a partial deck log for the JESS NEWTON and the diary of the chief engineer onboard the JESS NEWTON at the time of the allision, which provided new information about the breakdown of the JESS NEWTON's towing winch. According to the records produced, documenting the repairs effected, the breakdown onboard the JESS NEWTON consisted of a leakage that had impaired the directional control valve of its hydraulic system which caused the leakage of some 172 gallons of hydraulic fluid. None of this information was contained anywhere else in the record, particularly that the "directional control valve" had failed, the substantial amount of hydraulic fluid lost, or the amount of time it took to repair this major breakdown - some 15 hours.

Mr. Chourdakis, upon assessing this information, drafted a supplemental report dated January 12, 2021 reflecting this newly provided information which was not available to him or to Aframax Interests when Mr. Chourdakis prepared his initial expert's report in July 2020. Because Mr. Chourdakis was scheduled to be deposed on January 15, 2021, Tug Interests requested his deposition be rescheduled so that they had enough time to consider his supplemental report and adequately prepare for his deposition. Aframax Interests agreed to their request and Mr. Chourdakis' deposition was rescheduled for February 15, 2021 on that basis.

However, as noted above, on February 2, 2021, Tug Interests belatedly produced an investigation report they were improperly withholding that paints this case in an entirely different

11

light. So much so that Mr. Chourdakis had to supplement his report a second time, and Mr. Torborg had to supplement his initial report to consider this newly produced investigation report by Tug Interests. Mr. Chourdakis' second supplemental report is dated 2/11/2021 and Mr. Torborg's supplemental report is dated 2/12/2021. Tug Interests argue that Chourdakis' second supplemental report and Torborg's supplemental report are both untimely and should be struck[5].

This is incorrect as any additions or changes to Aframax Interests' expert reports must be disclosed by the time pretrial disclosures are due under Rule 26(a)(3). In this regard, Fed. R. Civ. P. 26(e)(2) provides:

> (2) Expert Witness. For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

*See also Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 421 (S.D. Tex. 2012).

While it might be argued by Tug Interests that the deadline for the submission of expert reports expired some months ago, the deadline for experts supplementing their expert reports under Rule 26(e)(2) remains unmodified by any of the existing scheduling orders that the Court has made in this case, because the Court has not included in its latest order a deadline for the submission of supplemental opinions of experts.

Moreover, Tug Interests argue that because Mr. Torborg's supplemental report considers evidence that he had in his possession at the time he wrote his initial report, in addition to this newly provided evidence, that Mr. Torborg is precluded from supplementing his report. However, Mr. Torborg's supplemental report expands upon his initial report, and based on the records

---

[5] Tug Interests demanded we either withdraw the supplemental expert reports or reschedule Chourdakis' and Torborg's depositions scheduled for the week of February 15, 2021. This ended up being a moot point because of the Texas winter storm that occurred that week leaving undersigned counsel without electricity for days.

produced by Tug Interests on October 26, 2020, and the withheld investigation report produced on February 2, 2021, Mr. Torborg also addresses the fact that the crewmembers onboard the JESS NETWON were untruthful in their depositions and have provided inconsistent testimony. In his supplemental report, Mr. Torborg ultimately concludes that:

> D. Based on the information and evidence known to me at this time, I can say with reasonable certainty that the mechanical breakdown of the Jess Newton's winch connected to the AR played a significant and substantial role in the incident. That is, the failure of Mate Arduengo to make the maneuvers he was ordered to by Pilot McGee, the falsifications in his testimony about the maneuvers he made with the Jess Newton, his failure to take action under the Navigation Rules, his failure to comply with the G&H Marine Operations Manual requirements, his keeping the Jess Newton against the hull of the AR when he was ordered by Pilot McGee to back at slow and then half speed; this all prevented the AR's stern from moving to her port. The breakdown of the winch onboard the Jess Newton contributed to all of the above and therefore, very significantly to this allision.

It is undisputed that neither Mr. Chourdakis nor Mr. Torborg had the investigation report improperly withheld by Tug Interests, or the maintenance records and logs produced on October 26, 2020 that provide a complete picture of the inoperable winches onboard the assist tugs, when they authored their initial reports in July 2020. This information was unavailable and unknown to both expert witnesses. Under these circumstances, Aframax Interests' experts are required to supplement their reports under Fed. R. Civ. P. 26(e)(2).

When new evidence is produced that was unavailable or unknown to the expert witness when they issued their initial report, the expert witness is permitted to consider such evidence and supplement their report if necessary. *Diaz,* 279 F.R.D. at \*\*25-26 (S.D. Tex. 2012). Moreover, under Fed. R. Civ. P. 26(a)(2), expert reports must include, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming [the expert witness's opinion]."

Accordingly, Aframax Interests respectfully submit that Mr. Chourdakis and Mr. Torborg must supplement their reports and that their supplemental reports are timely.

## V.    THE SCHEDULING ORDER SHOULD BE MODIFIED UNDER FED. R. CIV. P. 16(b)(4)

Good cause exists for the Court to modify the scheduling order under Fed. R. Civ. P. 16(b)(4)[6]. Plaintiff respectfully requests the Court not to yield to Defendants' demands for extreme discovery cut-off date enforcement at the expense of adjudicating the case with likely outcome-determinative evidence being excluded. Tug Interests have had in in their possession critical evidence that they failed to disclose with their initial disclosures over the course of some 2 years. Plaintiff respectfully contends it has shown good cause for the Court to allow the Tug Interests' quality and safety management officer to be deposed and asked questions about the documents Tug Interests are required by law to maintain under their ABS certification. With the evidence yielded from this process, the Court can make an adjudication without excluding any relevant and admissible evidence.

Rule 16(b)(4) of the Federal Rules of Civil Procedure requires a showing of good cause and the judge's consent. *Madison v. Pala Interstate, LLC*, 2014 U.S. Dist. LEXIS 170757 *8 (M.D. La. Dec. 10, 2014). "To determine if good cause exists, the Court should consider: (1) the explanation for the failure to timely act; (2) the importance of the evidence; (3) the potential prejudice in allowing the evidence; and (4) the availability of a continuance to cure that prejudice." *Parkcrest Builders, LLC v. Housing Authority of New Orleans (HANO)* 2017 U.S. Dist. LEXIS 158238 *6 (E.D. La. Sep. 26, 2017) (citing *S & W Enters., L.L.C. v. Southtrust Bank of Ala.*, 315 F.3d 533, 535-36 (5th Cir. 2003); *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).

---

[6] It should be noted that opposing counsel and Aframax Interests' predecessor counsel filed several joint motions under Fed. R. Civ. P. 16 to modify the scheduling order, and specifically the discovery deadline, citing numerous challenges presented by the COVID-19 pandemic during 2020 that continues to affect the world. Thus, the Tug Interests' attempt to blame the discovery extensions on Aframax is disingenuous and a further attempt to mislead this Court.

14

In the foregoing, and at the March 18, 2021 hearing, Aframax Interests have made the requisite showing. Allowing a couple months additional time to complete discovery will not cause prejudice to the parties, and will allow the court to decide the case on a complete assessment of the facts.

Dated: Houston, Texas
   March 22, 2021

                GAITAS & CHALOS, P.C.

                /s/ George A. Gaitas
                George A. Gaitas
                Texas State Bar No. 2405885
                Federal Bar No. 705176
                Jonathan M. Chalos
                State Bar No. 24097482
                Federal Bar No. 3008683
                1980 N Memorial Way
                Houston, Texas 77057
                Tel: (281) 501-1800
                Fax: (832) 962-8178
                E-mail: gaitas@gkclaw.com
                      chalos@gkclaw.com

                *Counsel for Aframax River Marine Co. and*
                *Executive Ship Management Pte Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2021, a copy of the foregoing was served on all counsel and/or parties of record via the Court's cm/ECF system.

                /s/George A. Gaitas
                George A. Gaitas