IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **INTERCONTINENTAL TERMINALS CORPORATION, LLC**<br>*Plaintiff*, | §<br>§<br>§<br>§ | |
| v. | §<br>§ | C.A. NO. 4:18-cv-3113<br>RULE 9(h) - ADMIRALTY |
| **AFRAMAX RIVER MARINE CO., EXECUTIVE SHIP MANAGEMENT PTE LTD., M/T AFRAMAX RIVER**<br>*Defendants / Third-Party Plaintiffs*, | §<br>§<br>§<br>§<br>§ | |
| v. | §<br>§ | |
| **SUDERMAN & YOUNG TOWING COMPANY, G&H TOWING COMPANY And SEABULK TOWING SERVICES, INC.**<br>*Third-Party Defendants*. | §<br>§<br>§<br>§<br>§ | |

# TUG INTERESTS' PRE-TRIAL MOTION FOR PARTIAL SUMMARY JUDGMENT ON AFRAMAX RIVER MARINE CO.'S CONTRIBUTION AND INDEMNITY CLAIM REGARDING ITC'S DAMAGES

Third-party Defendants Suderman & Young Towing Company ("S&Y") and G&H Towing Company ("G&H") (collectively referred to as "Tug Interests") respectfully move for a dismissal of all of Third-Party Plaintiff Aframax River Marine Co.'s ("ARM") claims for contribution and indemnity against Tug Interests pertaining to damages previously asserted against ARM by plaintiff Intercontinental Terminals Company ("ITC"). Specifically:

- In its Third-Party complaint, ARM claims that it should be entitled to recover against Tug Interests for any and all amounts that ARM might be compelled to pay (former) Plaintiff ITC. (Dkt. 34).

- On October 15, 2020, ITC and ARM filed a joint Motion to Dismiss with Prejudice (Dkt. 58), noting that all of the matters between ITC and ARM had been "fully settled and compromised."

i

- Tug Interests subsequently obtained a copy of the Oct. 2, 2020 *Settlement Agreement & Mutual Release* between ITC and ARM (the "Release") after the discovery deadline had ended. Notably, the Release did not include a full release of all *other* potential or alleged tortfeasors in the action (i.e., Tug Interests), and likewise did not include any language indicating that ITC was releasing its potential claims against Tug Interests specifically. The Agreement also failed to include an assignment of ITC's claims to ARM.

- On October, 20, 2021 ARM informed Tug Interests that they intend to seek recovery against Tug Interests for the settlement amount that ARM paid ITC in exchange for the Release.

- Under controlling maritime law, the proportionate liability scheme established in *McDermott, Inc. v. AmClyde* "precludes a settling tortfeasor from seeking contribution from a nonsettling tortfeasor." *Ondimar Transportes Maritimos v. Beatty St. Props., Inc*., 555 F.3d 184, 187 (5th Cir. 2009). Collaterally, ARM has no indemnity claims against Tug Interests under the facts presented.

- Because ARM failed to secure a release for ITC's potential claims against all defendants (including Tug Interests), and because ARM did not obtain an assignment of ITC's claims, ARM is unable to meet the limited exceptions to the rules set forth (by your Honor sitting by designation) in the matter of *Combo Maritime, Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599 (5th Cir. 2010).

In further support thereof, Tug Interests would respectfully show as follows:

## **TABLE OF CONTENTS**

                                                                                           **Page**

I.    INTRODUCTION AND BACKGROUND ....................................................................... 1

II.   ARGUMENT AND AUTHORITIES ............................................................................... 2

        A.    Summary Judgment Standard ............................................................................... 2

        B.    AmClye's Proportionate Share Rule, and its Implications in This Case ................ 3

               i.     ARM has no right to contribution against Tug Interests ............................ 3

               ii.    ARM did not obtain an Assignment of ITC's claims ................................. 4

               iii.   ARM has no right to indemnity against Tug Interests ............................... 4

III.  CONCLUSION ................................................................................................................. 7

148906.06501/127646310v.2

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bass v. Phoenix Seadrill/78, Ltd.*,
   749 F.2d 1154 (5th Cir. 1985) ...................................................................................6

*Cargill Ferrous Int'l Div. of Cargill, Inc. v. M/V PRINCESS MARGHERITA*,
   2001 WL 1426678 (E.D. La. Nov. 13, 2001) ................................................................5

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ......................................................................................................2

*Certainteed Corp. v. Mayfield*,
   No. CV 19-400-WBV-KWR, 2020 WL 5761118 (E.D. La. Sept. 28, 2020)
   (Vitter, J.) ......................................................................................................................2

*Combo Maritime, Inc. v. U.S. United Bulk Terminal, LLC*,
   615 F.3d 599 (5th Cir. 2010) ..................................................................................3, 4, 7

*GIC Servs., L.L.C. v. Freightplus USA, Inc.*,
   866 F.3d 649 (5th Cir. 2017) .........................................................................................5

*Hardy v. Gulf Oil Corp.*,
   949 F. 2d 826 (5th Cir. 1992) ................................................................................5, 6, 7

*Hercules v. Stevens Shipping Co.*,
   698 F.2d 726 (5th Cir.1983) (*en banc*) .........................................................................6

*In re Two-J Ranch, Inc.*,
   534 F. Supp. 2d 671 (W.D. La. 2008) ...........................................................................5

*Lindsay v. Ports Am. Gulfport, Inc.*,
   2016 WL 6821958 (E.D. La. Nov. 18, 2016) ................................................................5

*McCarty v. Hillstone Restaurant Group, Inc.*,
   864 F.3d 354 (5th Cir. 2017) .........................................................................................2

*McDermott, Inc. v. AmClyde*
   511 U.S. 202, 216, 221 (1994) ...............................................................................3, 5, 7

*Ondimar Transportes Maritimos v. Beatty St. Properties, Inc.*,
   555 F.3d 184 (5th Cir. 2009) ......................................................................................3, 7

*Pierce v. Five B's, Inc.*,
   No. Civ. A. 07-3263, 2008 WL 4091010 (E.D. La. Aug. 27, 2008) (Lemelle,
   J.) ...................................................................................................................................5

148906.06501/127646310v.2

*Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*,
    350 U.S. 124 (1956) ............................................................................................................6

*United States v. Reliable Transfer*,
    421 U.S. 397 (1975) ............................................................................................................5

**Other Authorities**

Fed. R. Civ. P. Rule 14(c) ............................................................................................................2

Fed. R. Civ. P. Rule 56 ................................................................................................................2

Fed. R. Civ. P. Rule 56(a) ...........................................................................................................2

Fed. R. Civ. P. Rule 56(c) ...........................................................................................................2

I.  INTRODUCTION AND BACKGROUND

By now, the Court should be well aware of the underlying facts of this matter and, in any case, the facts giving rise to this action are largely irrelevant to the pure legal issues raised in this motion. For general reference, this lawsuit arises out of a Sept. 6, 2016 allision by ARM's vessel AFRAMAX RIVER ("AFRAMAX") with two mooring dolphins owned by ITC, resulting in a large explosion and damages to the dolphins and AFRAMAX. The allision occurred when the AFRAMAX's engines surged unexpectedly due to an engine malfunction as the Vessel was departing a berth while under the assistance of two Tug Interest tugboats.

ITC brought claims against ARM, and ARM, in turn, brought a Third-Party complaint against Tug Interests asserting two causes of action: one for contribution and indemnity from Tug Interests to the extent ARM might be compelled to pay ITC, and one for negligence by Tug Interests allegedly leading to the damage suffered by the AFRAMAX. See Dkt. 34. Notably, ITC has never asserted claims against Tug Interests on its own behalf.

On October 15, 2020, ITC and ARM filed a joint motion to dismiss, which stated that "all of the matters which are the subject of Plaintiff, Intercontinental Terminals Company, LLC's, Complaint and Defendant, Aframax River Marine Co.'s, Counterclaim against Intercontinental Terminals Company, LLC have been fully settled, satisfied and compromised[.]" Dkt. 58. An Order of Dismissal was issued by the Court on October 27, 2020, dismissing ITC's Complaint with prejudice. Dkt. 60. ITC has not participated in this action since that time – the sole remaining claims in this action are ARM's third-party claims against Tug Interests.

As briefly referenced above, the joint motion to dismiss was predicated upon the Release solely entered into between ITC and ARM. See Ex. A.[1] The Release does not include Tug

---

[1] Due to the confidentiality provisions within the Release, and considering further that Tug Interests were not a party to that agreement, Tug Interests are filing a redacted copy of Ex. A.

1

Interests as a released party, or ARM's Rule 14(c) tender of Tug Interests as direct defendants to ITC. Although ITC and ARM undertake to mutually release each other under the Release in exchange for the consideration paid to ITC by ARM, <u>ARM did not obtain a full release of ITC's potential claims against other potential joint tortfeasors generally, or Tug Interests specifically</u>.

## II.     ARGUMENT AND AUTHORITIES

### A.     Summary Judgment Standard

A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. Fed. R. Civ. P. Rule 56(a). The court shall grant summary judgment if the movant shows that there is "no genuine dispute" as to any material fact and the movant is entitled to judgment as a matter of law. *Id*. Summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense. See 2010 Comments to Fed. R. Civ. P. Rule 56.

ARM bears the burden of proving its claims for contribution and indemnity.[2] The plain language of Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant shows the absence of a disputed material fact, the non-movant (i.e., ARM) "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *McCarty v. Hillstone Restaurant Group, Inc.*, 864 F.3d 354, 357 (5th Cir. 2017).

Tug Interests note that the last scheduling Order of January 5, 2021 set the dispositive

---

[2] See *Certainteed Corp. v. Mayfield*, No. CV 19-400-WBV-KWR, 2020 WL 5761118, at *4 (E.D. La. Sept. 28, 2020) (Vitter, J.) ("indemnification agreements are strictly construed and the party seeking to enforce the agreement bears the burden of proving the existence and applicability of the indemnity provision.") (citing cases).

2

motion deadline at February 19, 2021. However, given the subsequent resetting of this case's trial setting due to the Court's prioritization of its criminal docket, and the fact that Tug Interests only recently learned of ARM's intention to recoup the amounts it paid to ITC in exchange for ITC's release, Tug Interests believe that there is evident good cause for permitting this motion for summary judgment after the motion deadline. To that end, Tug Interests respectfully request that this motion also be construed by the Court as a motion for leave to file this summary judgment motion.

**B.** *AmClye*'s **Proportionate Share Rule, and its Implications in This Case**

In *McDermott, Inc. v. AmClyde*, the United States Supreme Court adopted the "proportionate share" rule (sometimes called the "proportionate fault" or "proportionate liability" rule), which applies to settlements in maritime cases. 511 U.S. 202, 216, 221 (1994). Under this rule, "each tortfeasor is ultimately liable only for his proportionate share of fault." *Ondimar Transportes Maritimos v. Beatty St. Properties, Inc.*, 555 F.3d 184, 186 (5th Cir. 2009). As discussed below, the proportionate share rule bars any claim by ARM against Tug Interests on contribution or indemnity.

    *i.*    ***ARM has no right to contribution against Tug Interests***

The proportionate share rule "precludes a settling tortfeasor," such as ARM, "from seeking contribution from a nonsettling tortfeasor," *i.e.*, the Tug Interests. *Ondimar*, 555 F.3d at 187. The only exception is where the settling tortfeasor (ARM) "obtains, as part of its settlement agreement with the plaintiff, a full release for **all** parties." *Combo Maritime, Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 603 (5th Cir. 2010) (with emphasis added). The *Combo Maritime* exception is not applicable here.

ARM is not entitled to contribution against Tug Interests because ARM has not obtained a full release of ITC's claims against all parties, including those against Tug Interests. The express

3

language of the Release expressly confirms that it is limited to ITC, ARM and Executive Ship Management PTE Ltd (the commercial manager of the AFRAMAX), which are the only "Parties" that are collectively defined in the Release. See Release. Pg. 1. Moreover, the Release expressly limits the released claims to those "which any Party has or could have against any other Party" arising out of the incident at issue. See Release, Para. 7. Tug Interests were not included as a released party here. Indeed, only "Aframax River Interests" (a term within the Release that is expressly limited to ARM and Executive Ship Management PTE Ltd.) are discharged in the Release. See Release, Pg. 4, Para. 1; Pgs. 5-6. Para. 7.

As Your Honor noted in *Combo Maritime*, "[i]f… a settling defendant discharges the plaintiff's entire claim as evidenced by a release of all potential joint tortfeasors, then the settling defendant has met the requirements for a contribution claim." *Combo Maritime*, 615 F. 3d at 604. That did not occur in this instance given the express terms of the Release, and as such ARM's contribution claim against Tug Interests fails as a matter of law.

    ii.    *ARM did not obtain an Assignment of ITC's claims*

Your Honor also held in *Combo Maritime* that "[w]here the settling tortfeasor takes an assignment of the plaintiff's claim, then the settling tortfeasor essentially steps into the plaintiff's shoes and pursues the plaintiff's claim." *Id*. at 603-604. However, no assignment was given by ITC to ARM in this instance. And even if one had occurred, *Combo Maritime* confirms that "there are strong policy reasons for not allowing a settling defendant to take an assignment of a tort claim under these circumstances." under the principles of *Onidmar* and *AmClyde*. *Id.* at 604.

    iii.    *ARM has no right to indemnity against Tug Interests*

The *AmClyde* proportionate share rule also bars claims for indemnification between a settling tortfeasor, such as ARM, and a non-settling (alleged) tortfeasor, such as Tug Interests. See *Lindsay v. Ports Am. Gulfport, Inc*., 2016 WL 6821958, at *3 (E.D. La. Nov. 18, 2016) ("Courts

4

have applied the rule from *AmClyde* to claims for tort indemnity."); *Cargill Ferrous Int'l Div. of Cargill, Inc. v. M/V PRINCESS MARGHERITA*, 2001 WL 1426678, at *1 (E.D. La. Nov. 13, 2001) ("Although *AmClyde* did not specifically discuss actions for tort indemnity, it is clear that the analysis is applicable to such a claim.").

Moreover, ever since the Supreme Court's decision in *United States v. Reliable Transfer*, 421 U.S. 397 (1975), the courts have steadily limited the availability of tort indemnity and "eliminated virtually every variety of tort indemnity once available under maritime law." *Hardy v. Gulf Oil Corp.*, 949 F. 2d 826, 833-35 (5th Cir. 1992). In its place, the courts have adopted a comparative fault system where damages in most cases should be allocated according to the respective fault of the liable tortfeasors. *Id*. The general maritime law does not authorize an action for tort indemnity against a third-party defendant. *Hardy*, 949 F .2d at 834. As noted by the Fifth Circuit, "[o]ur cases have consistently held that partial fault is incompatible with full indemnity." *GIC Servs., L.L.C. v. Freightplus USA, Inc.*, 866 F.3d 649, 664 (5th Cir. 2017).

The general maritime law only recognized three limited theories of indemnity. See *Hardy*, 949 F.2d at 833-35; *Pierce v. Five B's, Inc.*, No. Civ. A. 07-3263, 2008 WL 4091010, at *2 (E.D. La. Aug. 27, 2008) (Lemelle, J.). None are applicable to ARM's claim of indemnity against Tug Interests.

First, there is no allegation that ARM is a "vicariously liable or non-negligent tortfeasor." See *Hardy*, 949 F.2d at 833. There is no right to indemnity under this theory where the plaintiff has not alleged that the defendant (i.e., ARM) is vicariously liable or non-negligent. See, e.g., *In re Two-J Ranch, Inc.*, 534 F. Supp. 2d 671, 687 (W.D. La. 2008). This exception is inapplicable here because all of the allegations ITC asserted against ARM are based on ARM's negligence; there are no allegations that ARM is vicariously liable, strictly liable, or otherwise liable for Tug

5

Interests' alleged acts or omissions. See generally ITC's Second Amended Complaint at Dkt. 29.

The next remaining theory of indemnity is the *Ryan* doctrine. In *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124 (1956), a longshoreman was injured when he attempted to shift cargo that a stevedore had improperly stowed. The longshoreman sued the vessel owner. The Supreme Court concluded that the vessel could recover indemnity from the stevedore company because the stevedore breached a warranty of workmanlike performance implied in the contract between the vessel and the stevedore. However, "[t]he scope of *Ryan* indemnity [] is narrow [and] [t]he Fifth Circuit has been reluctant to expand the *Ryan* doctrine beyond its facts." *Hardy*, 949 F.2d at 834 (citing to *Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1167 (5th Cir. 1985) and *Hercules v. Stevens Shipping Co.*, 698 F.2d 726, 738 n. 25 (5th Cir.1983) (*en banc*)). Obviously, *Ryan* has no relevance whatsoever to the facts of this case, particularly as ARM has admitted (a) that its own engine malfunctioned[3] and (b) that Tug Interests were not responsible for the AFRAMAX engine's overspeeding.[4]

Finally, there is no express contractual agreement between ARM and Tug Interests by which Tug Interests agreed to indemnify ARM. See *Hardy*, 949 F.2d at 834. "An indemnity clause will not afford protection unless its terms are expressed unequivocally." *Id*. ARM has not sued Tug Interests for breach of any contract of indemnity between them. ARM has never made any claim for contractual indemnity against Tug Interests in its pleadings and has never pled any facts supporting contractual indemnity. There is simply no evidence of any express and unequivocal contract of indemnity under which Tug Interests agreed to indemnify ARM. In the absence of such an express and unequivocal agreement, ARM cannot claim contractual indemnity

---

[3] See Dkt. 34, ARM Amended Counterclaim, Third Party Complaint, and Rule 14(C) Tender, Para 27.
[4] See Ex. B, Jun. 25, 2020 Corporate Deposition of ARM Corporate Representative Vijay Cherukuri (testifying at Pgs. 73-74 that Tug Interests were not responsible for the equipment malfunctions that occurred within equipment located aboard the AFRAMAX).

from Tug Interests.  See *Hardy*, 949 F. 2d at 834.

### III.   CONCLUSION

In sum, courts have consistently held that the proportionate liability rule prohibits claims for contribution or tort indemnity between settling and non-settling defendants where, as here, the there was no "full release for all parties." *Combo Maritime*, 615 F.3d at 603.  The ITC – ARM Release fits perfectly within the contours of that principle. Under clear and controlling authority, ARM is not permitted to recover against Tug Interests - either via contribution or indemnity – for the amounts it paid to ITC in connection with the Release.  See *AmClyde*, 511 U.S. at 221; *Ondimar*, 555 F.3d at 188; *Combo Maritime*, 615 F.3d at 603-04.  Accordingly, these claims must be dismissed as a matter of law.

Respectfully Submitted,

BLANK ROME LLP

*/s/ Jeremy A. Herschaft*
Jeremy A. Herschaft
Attorney-In-Charge
State Bar No. 24091970
Federal I.D. No. 1450990
Michael K. Bell
Tx State Bar No. 02081200
Fed. I.D. No. 5085
Zachary J. Wyatte
State Bar No. 24110556
Federal I.D. No. 3350752
717 Texas Avenue, Suite 1400
Houston, Texas 77002
Telephone: (713) 228-6601
Facsimile: (713) 228-6605
Email: jherschaft@blankrome.com
mbell@blankrome.com
zwyatte@blankrome.com

7

***ATTORNEYS FOR THIRD-PARTY DEFENDANTS,*** Suderman & Young Towing Company and G&H Towing Company

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Tug Interests conferred with counsel for Aframax River Marine Co. on December 30, 2021 concerning filing a redacted copy of Ex. A and counsel for Aframax River Marine Co. is unopposed to same.

*/s/ Michael K. Bell*
Michael K. Bell

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served pursuant to Federal Rule of Civil Procedure 5 on all counsel and/or parties of record on this 30th day of December, 2021.

*/s/ Jeremy A. Herschaft*
Jeremy A. Herschaft