# EXHIBIT A

## SETTLEMENT AGREEMENT & MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Settlement Agreement") is entered into by and between Plaintiff/Counter Defendant, Intercontinental Terminals Company, LLC, and Defendants/Counter Claimants Aframax River Marine Co., Executive Ship Management PTE Ltd., and M/T AFRAMAX RIVER, (collectively, the "Parties").

### A.   DEFINITIONS

As used in this Settlement Agreement:

1. "ITC" means and includes Intercontinental Terminals Company, LLC, and its affiliated companies (parent, subsidiary, and related corporations, both currently existing and those existing at the time of the Occurrence in Question), and all of their directors, officers, employees, agents, insurers, re-insurers, attorneys, officers, and successors.

2. "Aframax" means and includes Aframax River Marine Co., and its affiliated companies (parent, subsidiary, and related corporations, both currently existing and those existing at the time of the Occurrence in Question), and all of their directors, officers, employees, agents, insurers, re-insurers, attorneys, officers, successors, and all vessels under its ownership, management, and control, including but not limited to the M/T AFRAMAX RIVER, and the crew, owners, operators, and insurers of said vessels.

3. "Executive Ship Management" means and includes Executive Ship Management PTE Ltd., and its affiliated companies (parent, subsidiary, and related corporations, both currently existing and those existing at the time of the Occurrence in Question), and all of their directors, officers, employees, agents, insurers, re-insurers, attorneys, officers, and successors, and all vessels

1

under its ownership, management, and control, including but not limited to the M/T AFRAMAX RIVER, and the crew, owners, operators, and insurers of said vessels.

4. "Aframax River Interests" means and includes Aframax, M/T AFRAMAX RIVER, and Executive Ship Management.

5. "Occurrence in Question" means and includes the incident in September 6, 2016, in which the M/T AFRAMAX RIVER contacted the northern most mooring dolphins at Intercontinental Terminals Company's pier with berths 7A and 7B, in the Houston Ship Channel, resulting in an oil spill and fire, and damages to the mooring dolphins and the M/T AFRAMAX RIVER.

6. "Claims and Causes of Action" means and includes all past, present, or future claims, causes of action, demands, liabilities, obligations, actions, costs, and losses of any kind whatsoever, for any type of damages or compensation of any kind or character, recoverable by statute or by common law or by civil code, under the General Maritime Law of the United States, or the laws of the State of Texas, regardless of whether said claims or damages are now known or unknown, or whether they have been pled or could have been pled in any lawsuit. By way of illustration, and not with any limitation, the phrase "Claims and Causes of Action" includes claims for negligence, negligence per se, strict liability, unseaworthiness of any vessel, trespass, gross negligence, intentional tort, breach of contract, or breach of warranty. Further by way of illustration, and not with any limitation, the phrase "Claims and Causes of Action" includes claims for actual damages, consequential damages, lost profits or revenue, and pre-judgment or post-judgment interest.

B. **RECITALS**

1. ITC owns and operates a terminal with five (5) deep-draft tanker berths and ten (10) barge docks located on the south side of the Houston Ship Channel at the mouth of Tucker Bayou. Intercontinental Terminals Company owns two mooring dolphins near the terminal associated with dock 7 ("MD1") and dock 8 ("MD2").

2. Aframax was the owner of the M/T AFRAMAX RIVER (the "Vessel"), a Panamanian flagged double-hull crude-oil tanker, built in 2002 by Imabari Shipbuilding Saijo Dockyard in Saijo, Japan. Executive Ship Management provided the crew and technical management for the Vessel.

3. To recover the damages allegedly suffered in the Occurrence in Question, Intercontinental Terminals Company initiated litigation against the Aframax and the other Aframax Aframax River Interests in the case styled *Intercontinental Terminal Co, LLC v. Aframax River Marine Co., et al.*, in the U.S. District Court, of the Southern District of Texas, designated as Cause No. 4:18-cv-3113 (the "Lawsuit").

4. The Aframax River Interests asserted a Counterclaim against ITC to recover damages allegedly suffered by the Aframax River Interests in the Occurrence in Question.

5. ITC and the Aframax River Interests deny, and continue to deny, the allegations made in the Lawsuit and Counterclaim.

6. Following mediation, the parties entered into a Settlement Agreement outlining the terms of the settlement at the mediation.

7. In order to avoid the costs and burdens of any further litigation in the above-captioned matter and without admitting fault or liability, the Parties now desire, through the execution of this Settlement Agreement, to dispose of and resolve fully and completely any and all disputes, claims,

3

issues, and differences between them, including but not limited to, those which have arisen or could have arisen out of the facts and events that form the basis of the Lawsuit, and any and all actual or implied claims, demands or causes of action which any Party has or could have against any other Party arising out of the Occurrence in Question, or any other actions or proceedings in any legal, administrative, or other forum whatsoever arising out of the Occurrence in Question.

8. In consideration of the mutual promises set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

## C. COVENANTS AND RELEASES

1. For and in consideration of the payment by the Aframax River Interests to ITC of ███████████████████████████████████████ (the "Settlement Payment") in full and final settlement of all Claims and Causes of Action, the receipt and sufficiency of which is hereby acknowledged, ITC hereby releases and forever discharges the Aframax River Interests from all Claims and Causes of Action possessed by ITC arising out of or relating to the Occurrence in Question, including, but not limited to, all Claims and Causes of Action which they have asserted or could have asserted in the Lawsuit.

2. For good and ample consideration, the sufficiency of which is hereby acknowledged, the Aframax River Interests hereby release and forever discharge ITC from all Claims and Causes of Action possessed by the Aframax River Interests arising out of or relating to the Occurrence in Question, including, but not limited to, all Claims and Causes of Action which they have asserted or could have asserted in the Lawsuit and Counterclaim.

4

3.  The Settlement Payment shall be paid by the Aframax River Interests on or before October 5, 2020, subject to prior execution of this Settlement Agreement, by wire transfer to the ▆▆▆▆▆▆▆▆ bank account specified as follows:



4.  As additional consideration for the Settlement Payment, ITC agrees to return the original Letter of Undertaking dated September 16, 2016, issued by The Britannia Steam Ship Insurance Association Limited as security for ITC's claims against the Aframax River Interests arising out of the Occurrence in Question, to counsel for the Aframax River Interests by trackable courier service by October 5, 2020.

5.  The Parties further agree to promptly dismiss with prejudice any and all claims they have asserted against each other in the Lawsuit, or in any other lawsuit(s), and shall cooperate to obtain all necessary orders of dismissal.

6.  All pending discovery between the Parties is stayed until the Court signs an order dismissing the Parties claims against each other with prejudice.

7.  Except as to such rights as may be created under this Settlement Agreement, ITC and all of its past, present and future directors, officers, owners, members, employees, agents, servants,

5

attorneys, assigns, insurers, representatives, employers, partners, shareholders, affiliates, divisions, subsidiaries, ERISA plan members, beneficiaries, and plan administrators, predecessors, and successors in interest and/or any succeeding bankruptcy estates, and all other persons, entities, associations, partnerships and corporations with whom any of the former have been, are now or may hereafter be affiliated hereby irrevocably and unconditionally RELEASE, ACQUIT, AND FOREVER DISCHARGE the Aframax River Interests and all of their past, present and future agents, employees, owners, members, shareholders, representatives, officers, directors, successors, assigns, parents, subsidiaries, predecessors, affiliates, servants, insurers, employers, partners, divisions, and attorneys, from and against any and all debts, promises, covenants, agreements, contracts, endorsements, bonds, controversies, suits, causes of action, judgments, cross-claims, claims, counterclaims, actions, rights, demands, costs, expenses, principal, interest, obligations, liabilities, losses and damages of every kind and character whatsoever in law or equity, asserted or unasserted, express or implied, foreseen or unforeseen, real or imaginary, suspected or unsuspected, accrued or unaccrued, known or unknown, liquidated or non-liquidated, of any kind or nature or description whatsoever, that ITC ever had, or presently have or claim to have, against any of the Aframax River Interests, arising from or related to any and all actual or implied claims, demands and causes of action arising out of or connected with, directly or indirectly, the Lawsuit.

        8.     ITC acknowledges and understands that hereafter it may discover or appreciate claims, facts, issues or concerns in addition to or different from those that they now know or believe to exist with respect to the subject matter of this Settlement Agreement that, if known or suspected at the time of execution of this Settlement Agreement, might have materially affected the settlement embodied herein. ITC nevertheless agrees that its release applies to any such additional or different

claims, facts, issues or concerns arising from or related to the Lawsuit. ITC acknowledges that this release is intended to be very broad and is a material element of this Settlement Agreement.

9. As a material inducement to the Aframax River Interests to enter into this Settlement Agreement and, as an indivisible part of the consideration to be received by it from ITC for entry into this Settlement Agreement and the performance of their obligations hereunder, ITC agrees, for and on behalf of themselves and all of their past, present and future directors, officers, members, owners, employees, agents, servants, attorneys, assigns, insurers, representatives, employers, partners, shareholders, affiliates, divisions, subsidiaries, ERISA plan members, beneficiaries, and plan administrators, predecessors, and successors in interest and/or any succeeding bankruptcy estates, and all other persons, entities, associations, partnerships and corporations with whom any of the former have been, are now or may hereafter be affiliated, not to initiate any further legal proceedings against the Aframax River Interests, in any forum which relate in any manner to the Lawsuit and/or the claims described herein.

10. Except as to such rights as may be created under this Settlement Agreement, the Aframax River Interests and all of their past, present and future directors, officers, owners, members, employees, agents, servants, attorneys, assigns, insurers, representatives, employers, partners, shareholders, affiliates, divisions, subsidiaries, ERISA plan members, beneficiaries, and plan administrators, predecessors, and successors in interest and/or any succeeding bankruptcy estates, and all other persons, entities, associations, partnerships and corporations with whom any of the former have been, are now or may hereafter be affiliated hereby irrevocably and unconditionally RELEASE, ACQUIT, AND FOREVER DISCHARGE ITC and all of its past, present and future agents, employees, owners, members, shareholders, representatives, officers, directors, successors, assigns, parents, subsidiaries, predecessors, affiliates, servants, insurers, employers, partners,

divisions, and attorneys, from and against any and all debts, promises, covenants, agreements, contracts, endorsements, bonds, controversies, suits, causes of action, judgments, cross-claims, claims, counterclaims, actions, rights, demands, costs, expenses, principal, interest, obligations, liabilities, losses and damages of every kind and character whatsoever in law or equity, asserted or unasserted, express or implied, foreseen or unforeseen, real or imaginary, suspected or unsuspected, accrued or unaccrued, known or unknown, liquidated or non-liquidated, of any kind or nature or description whatsoever, that the Aframax River Interests ever had, or presently have or claim to have, against ITC, arising from or related to any and all actual or implied claims, demands and causes of action arising out of or connected with, directly or indirectly, the Lawsuit.

11. The Aframax River Interests acknowledge and understand that hereafter they may discover or appreciate claims, facts, issues or concerns in addition to or different from those that they now know or believe to exist with respect to the subject matter of this Settlement Agreement that, if known or suspected at the time of execution of this Settlement Agreement, might have materially affected the settlement embodied herein. The Aframax River Interests nevertheless agree that their release applies to any such additional or different claims, facts, issues or concerns arising from or related to the Lawsuit. The Aframax River Interests acknowledge that this release is intended to be very broad and is a material element of this Settlement Agreement.

12. As a material inducement to ITC to enter into this Settlement Agreement and, as an indivisible part of the consideration to be received by it from the Aframax River Interests for entry into this Settlement Agreement and the performance of their obligations hereunder, the Aframax River Interests agree, for and on behalf of themselves and all of their past, present and future directors, officers, members, owners, employees, agents, servants, attorneys, assigns, insurers, representatives, employers, partners, shareholders, affiliates, divisions, subsidiaries, ERISA plan

members, beneficiaries, and plan administrators, predecessors, and successors in interest and/or any succeeding bankruptcy estates, and all other persons, entities, associations, partnerships and corporations with whom any of the former have been, are now or may hereafter be affiliated, not to initiate any further legal proceedings against ITC in any forum which relate in any manner to the Lawsuit and/or the claims described herein.

### F. OTHER PROVISIONS

1. **GOVERNING LAW**. The validity, effect, and construction of this Settlement Agreement and any obligations undertaken pursuant hereto, and any dispute relating to or arising from the negotiation and execution of this Settlement Agreement, shall be governed by the laws of the State of Texas, without regard to any conflict of laws provisions. All disputes regarding the Settlement Agreement shall be filed in the United States District Court for the Southern District of Texas.

2. **REPRESENTATIONS AND WARRANTIES**. The Parties represent and warrant that they are the sole owners of all claims, rights, demands, and causes of action that they are relinquishing by executing this Settlement Agreement and that no other person or entity has any interest in such claims, rights, demands, and causes of action.

3. **BINDING AGREEMENT**. This Settlement Agreement shall inure to the benefit of the Parties, and shall be binding upon the Parties and their heirs, estates, administrators, executors, representatives, attorneys, predecessors in interest (if any), successors, assigns, parents, divisions, affiliates, and beneficiaries.

4. **BREACH.** The Parties acknowledge and agree that this Settlement Agreement may be used as evidence in any subsequent action or proceeding in which any party alleges a breach of this Settlement Agreement or asserts any claims inconsistent with its terms.

5. **CONSIDERATION**. The Parties acknowledge, warrant, and agree that adequate consideration was exchanged and supplied by and between the Aframax River Interests and ITC for the consummation of this Settlement Agreement.

6. **JOINT EFFORTS**. This Settlement Agreement has been prepared by the joint efforts of the respective attorneys for each of the Parties and each party acknowledges that they have carefully read the instrument and that the instrument expresses the entire agreement between the Parties concerning the subjects it purports to cover and that each party has executed this instrument freely and of its own accord. The parties agree that the doctrine of contra proferentem shall not apply to the interpretation and application of this Settlement Agreement.

7. **COUNTERPARTS AND DELIVERY**. This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original. Delivery of a counterpart executed by a Party may be accomplished by mail with actual receipt of the counterpart, or by other means of actual delivery including, but not limited to, courier or commercial delivery service, or by Telecopier, or by the reply-email confirmed receipt of an image of the executed counterpart recorded in Adobe Acrobat format, to the record counsel in the Lawsuit for the other Party.

8. **TITLES**. The titles of the Sections of this Settlement Agreement are inserted for convenience only and shall not affect the meaning or construction of any of the terms of this Settlement Agreement.

9. **SEVERABILITY**. In the event that any one or more of the provisions contained in this Settlement Agreement shall, for any reason, be declared in a legal forum to be invalid, illegal, ineffective, or unenforceable in any respect, such invalidity, illegality, ineffectiveness or unenforceability shall not affect any other provisions of this Settlement Agreement, which

10

Settlement Agreement shall remain in full force and effect, valid, and binding upon all of the parties to this Settlement Agreement, and each of the provisions of this Settlement Agreement shall be enforceable independently of any other provision of this Settlement Agreement and independently of any other claim or cause of action, EXCEPT that if the general releases are held to be invalid, illegal, or unenforceable, then the entire Settlement Agreement shall be considered null and void *ab initio*, and the payment to ITC by the Aframax River Interests provided for in this Settlement Agreement shall be returned immediately by ITC to the Aframax River Interests, unless otherwise agreed to in writing by the Parties to this Settlement Agreement.

10. **ENTIRE AGREEMENT; AMENDMENT**. This Settlement Agreement constitutes the full, complete, and entire understanding, agreement, and arrangement of and between the parties hereto with respect to the subject matter hereof and supersedes any and all prior oral and written understandings, agreements and arrangements between them. There are no other agreements, covenants, promises or arrangements between the parties other than those set forth herein concerning the subject matter of this Settlement Agreement. There is no other consideration for this Settlement Agreement other than the consideration set forth in this Settlement Agreement. This Settlement Agreement may be amended, altered, modified or waived, in whole or in part, only in a writing executed by all parties to this Settlement Agreement. This Settlement Agreement may not be amended, altered, modified or waived, in whole or in part, orally.

11. **NO WAIVER**. The failure of either ITC or by the Aframax River Interests to insist upon strict adherence to any term of this Settlement Agreement on any occasion shall not be considered a waiver thereof or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of this Settlement Agreement.

11

12. **NO RELIANCE BY ITC UPON ANY PROMISE, AGREEMENT, OR REPRESENTATION WHICH IS NOT HEREIN EXPRESSED**. ITC expressly warrants and represents and hereby states and represents that no promise, agreement, or representation which is not herein expressed has been made to them in executing this Settlement Agreement and that they are not relying upon any promise, agreement, statement, or representation of the Aframax River Interests or their attorneys. ITC is relying solely on its own judgment and it has been represented by its own legal counsel in this matter. The aforesaid legal counsel has read and explained to them the entire contents of all releases and other provisions contained in this Settlement Agreement as well as the legal consequences of this Settlement Agreement.

13. **NO RELIANCE BY THE AFRAMAX RIVER INTERESTS UPON ANY PROMISE, AGREEMENT, OR REPRESENTATION WHICH IS NOT HEREIN EXPRESSED**. The Aframax River Interests expressly warrant and represent and hereby state and represent that no promise, agreement, or representation which is not herein expressed has been made to them in executing this Settlement Agreement and that they are not relying upon any promise, agreement, statement, or representation of ITC or its attorneys. The Aframax River Interests are relying solely on their own judgment and they have been represented by their own legal counsel in this matter. The aforesaid legal counsel has read and explained to them the entire contents of all releases and other provisions contained in this Settlement Agreement as well as the legal consequences of this Settlement Agreement.

14. **NO DURESS**. The Parties hereto have entered into this Settlement Agreement voluntarily and with consent of counsel for valuable consideration, and not by reasons of any fraud, duress, undue influence or mistakes. The Parties represent and warrant that (a) they are competent to enter into this Settlement Agreement, (b) they are represented by legal counsel in connection with

the execution of this Settlement Agreement and related documents, (c) they are not in a significantly disparate bargaining position, and (d) they are knowledgeable and fully able to evaluate the merits and risks of this transaction.

15. **REPRESENTATION BY AND CONSULTATION WITH COUNSEL**. The Parties acknowledge that they are executing and delivering this Settlement Agreement with full knowledge of any and all rights which they may have with respect to the claims and causes of action herein settled and released. Each of the Parties to this Settlement Agreement acknowledges that it has been represented by counsel of its own choosing in connection with the Lawsuit and the negotiation and execution of this Settlement Agreement and that each has had a reasonable and sufficient opportunity to consult with counsel to the extent each desire before executing this Settlement Agreement.

16. **ACKNOWLEDGMENT**. Each of the parties acknowledges that it has read this Settlement Agreement and that each fully knows, understands, and appreciates this Settlement Agreement and executes this Settlement Agreement and makes the settlement and release provided for herein voluntarily and of his, her, or its own free will and by executing this Settlement Agreement signifies his, her, or its assent to and willingness to be bound by its terms.

17. **EACH PARTY SHALL BEAR ITS OWN COSTS AND FEES**. The Parties hereto agree that each party will bear his or its own costs and attorneys' fees as to each other and will not seek their attorneys' fees and costs from each other related to the Lawsuit or the negotiation, preparation, execution and delivery of this Settlement Agreement.

18. **EFFECTIVENESS**. This Settlement Agreement does not become effective unless and until it is executed and delivered by all of the Parties.

13

19. **INDEMNITY AGREEMENT.** ITC agrees to indemnify, hold harmless, and defend the Aframax River Interests from any and all demands, suits, claims, damages, and judgments against any or all of the Aframax River Interests, including but not limited to court costs and attorneys' fees, arising out of the Occurrence in Question and asserted by, through, or under Intercontinental Terminals Company, LLC, specifically including (but not limited in any way to) any demands, suits, interventions or claims asserted, or which may be asserted in the future, in any proceeding, legal or administrative, by any assignee, subrogee, or lien holder of the ITC for reimbursement of damages or expenses of any kind. This indemnity and hold harmless obligations is to be effective and in full force even if it is alleged or determined that any damages were caused expressly, solely, or in part by the negligence, strict liability, gross negligence, intentional conduct, or other fault of the Aframax River Interests. This indemnity does not apply in any regard to the claims the Aframax River Interests are asserting against the tugs or the tugs against the Aframax River Interests.

20. **NO ADMISSION.** The Parties agree that nothing in this Agreement, or their actions hereunder, shall be construed as an admission by any Party of any liability or responsibility for, or of the correctness of, any of the claims which are being released hereby.

21. **BINDING EFFECT.** It is specifically agreed and understood that this Agreement is unconditional and unqualified and shall be a fully binding settlement between the Parties. This Agreement shall inure to the benefit of the ITC and the Aframax River Interests and shall be binding upon their successors, assigns, and beneficiaries.

22. **ADDITIONAL DOCUMENTS**. The Parties or their counsel shall execute all such further and additional documents that shall be reasonable, convenient, and necessary to carry out the provisions and intent of this Agreement.

23. **CONFIDENTIALITY**. As a material inducement to enter into this Settlement Agreement, and as an indivisible part of the consideration to be received by the parties for entry into this Settlement Agreement and the performance of the obligations set forth herein:

(a). The Parties and their attorneys covenant and agree that they will not disclose or reveal to any person, corporation or entity whatsoever, or publish, publicize, disseminate, communicate or cause, directly or indirectly, to be disclosed, revealed, published, publicized, disseminated or communicated, to any person, corporation or entity whatsoever, any information whatsoever concerning allegations made including but not limited to: (i) the factual allegations made in the Lawsuit or any of the facts relating to the subject matter of the Lawsuit; (ii) the discussions and circumstances preceding settlement; (iii) any term, condition or provision of settlement or of this Settlement Agreement including, but not limited to, any benefits received under this Settlement Agreement.

(b). Specifically exempted from this non-disclosure and confidentiality provision is any disclosure of this Settlement Agreement that may be required to be made by the Aframax River Interests to the tug interests as part of the ongoing proceedings between them in Lawsuit or other lawsuits. ITC agrees and consents to the Aframax River Interests disclosure of this Settlement Agreement to the tugs.

(c). Any non-disclosure provision in this Settlement Agreement does not prohibit or restrict the Parties and their attorneys from making disclosures or communications to their attorneys,

15

tax advisors, or accountants, but only to the extent necessary to manage their financial affairs, and only to the extent that the above-named persons have expressly agreed to keep the terms and conditions of, and consideration for, this Settlement Agreement confidential and to be bound by the confidentiality provisions of this Settlement Agreement as set forth in this paragraph. Further, any non-disclosure provision in this Settlement Agreement does not prohibit or restrict the Parties and their attorneys from making disclosures or communications to any governmental or quasi-governmental regulatory body or entity for which such information as required to be provided by law. Further, any non-disclosure provision in this Settlement Agreement does not prohibit or restrict the Parties and their attorneys from making disclosures in response to discovery in the Lawsuit.

(d). In the event that the Parties or their attorneys are required to release information in response to a valid discovery order of a court of competent jurisdiction, they shall provide all Parties' counsel with advance written notice, and shall consult and cooperate on a reasonable basis in taking appropriate legal steps to uphold the confidentiality agreement of this Settlement Agreement.

[SIGNATURES ON NEXT PAGE]

WITNESSES:

[signature]

[signature]

Intercontinental Terminals Company, LLC

BY: _Robert Bell_____

Duly Authorized Representative

This 2 day of ~~September,~~ October 2020.

WITNESSES:

[signature]

[signature]

Aframax River Marine Co., Executive Ship Management PTE Ltd., and M/T Aframax River

BY: _____

Duly Authorized Representative

This 2 day of ~~September,~~ October 2020.

17

## AFFIDAVIT

STATE OF __Louisiana__

COUNTY OF __ORLEANS__

BEFORE ME, the undersigned authority, personally came and appeared:

__MICHAEL HAROWSKI__

who, after being first duly sworn, did depose and say:

That she/he is of the age of majority and is fully capable of making this affidavit;

That she/he is the __attorney for__ **Aframax River Marine Co., Executive Ship Management PTE Ltd., and M/T Aframax River**; and

That she/he is authorized to execute the foregoing Compromise, Settlement, and Release Agreement on the company's behalf.

_[signature]_

SWORN TO AND SUBSCRIBED

BEFORE ME, THE UNDERSIGNED

AUTHORITY, THIS __2nd__ DAY

OF ~~SEPTEMBER~~ __October__ 2020.

_[signature]_
Ashley E. Bane
La. Bar No. 35640

19

## AFFIDAVIT

STATE OF _Texas_

COUNTY OF _Harris_

BEFORE ME, the undersigned authority, personally came and appeared:

_Robert Bell_

who, after being first duly sworn, did depose and say:

That she/he is of the age of majority and is fully capable of making this affidavit;

That she/he is the _Attorney for_ Intercontinental Terminals Company, LLC; and

That she/he is authorized to execute the foregoing Compromise, Settlement, and Release Agreement on the company's behalf.

_Robert Bell_

SWORN TO AND SUBSCRIBED

BEFORE ME, THE UNDERSIGNED

AUTHORITY, THIS _2nd_ DAY

OF ~~SEPTEMBER 2020~~ _October 2020_

_Karen Parker Bradley_

KAREN PARKER BRADLEY
Notary ID #126945029
My Commission Expires
July 7, 2021

18