United States District Court
Southern District of Texas
**ENTERED**
March 11, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| INTERCONTINENTAL TERMINALS CORP., LLC, § § § *Plaintiff*, § § v. § § AFRAMAX RIVER MARINE CO., EXECUTIVE § SHIP MANAGEMENT PTE LTD., and M/T § AFRAMAX RIVER, § § *Defendants/Third-Party Plaintiffs*, § § v. § § SUDERMAN & YOUNG TOWING CO., G&H § TOWING CO., and SEABULK TOWING § SERVICES, INC., § § *Third-Party Defendants*. § | CIVIL ACTION H-18-3113 |

### MEMORANDUM OPINION AND ORDER

Pending before the court is third-party defendants Suderman & Young Towing Company and G&H Towing Company's (collectively, "Tug Interests") motion for partial summary judgment on third-party plaintiff Aframax River Marine Company's ("Aframax") claims for contribution and indemnification. Dkt. 96. After reviewing the motion, response, and the applicable law, the court is of the opinion that Tug Interests' motion for partial summary judgment should be GRANTED.

### I. BACKGROUND

This case arises from the allision of Aframax's vessel with mooring dolphins belonging to Intercontinental Terminals Corp., LLC ("ITC") while escorted by two tugs owned or operated by Tug Interests. ITC sued Aframax for the damage caused by the allision and the losses that resulted.

Dkt. 29. Aframax responded with a counterclaim against ITC, brought a third-party complaint against Tug Interests, and tendered Tug Interests as a direct defendant to ITC's claims under Federal Rule of Civil Procedure 14(c). Dkt. 34. Subsequently, ITC and Aframax executed a "Settlement Agreement and Mutual Release" (the "Settlement Agreement"). *See* Dkts. 96 at 1; 96, Ex. A; 102 at 3; 102, Ex. A. The court then granted ITC's motion to dismiss its claims with prejudice. Dkts. 58, 60.

ITC has not participated in the lawsuit since that time, and all that remains to be adjudicated is Aframax's third-party complaint against Tug Interests, which brings causes of action for negligence, contribution, and indemnification. *See* Dkt. 34. After the dispositive motion deadline, Tug Interests filed a motion for partial summary judgment arguing that the contribution and indemnification claims are barred under general maritime law due to Aframax's settlement with ITC. Dkt. 96. The court found good cause to decide the matter before trial and amended the scheduling order. Dkt. 97. Aframax timely filed a response in compliance with the court's order. Dkt. 102.

## II. Legal Standard

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party meets its burden, the burden shifts to the nonmoving party to set forth specific facts showing a

genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

### III. ANALYSIS

The parties do not dispute the relevant facts but disagree on the conclusions of law. *See* Dkts. 96, 102. The court concludes that Tug Interests is entitled to summary judgment as a matter of law for both the contribution and indemnification claims.

### A. Contribution Claim

"In admiralty cases, federal courts allocate damages based upon the parties' respective degrees of fault." *In re Omega Protein, Inc.*, 548 F.3d 361, 370 (5th Cir. 2008) (citing *United States v. Reliable Transfer Co.*, 421 U.S. 397, 411, 95 S. Ct. 1708 (1975)). The Supreme Court has established a "proportionate liability framework . . . under which each tortfeasor ultimately is liable only for his proportionate share of fault." *Ondimar Transportes Maritimos v. Beatty St. Props., Inc.*, 555 F.3d 184, 186 (5th Cir. 2009) (citing *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 208–09, 114 S. Ct. 1461 (1994)).

"Contribution is defined as the 'tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault.'" *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 138, 127 S. Ct. 2331 (2007) (quoting *Contribution, Black's Law Dictionary* (8th ed. 2004)). The *AmClyde* framework generally "precludes a settling tortfeasor from seeking contribution from a nonsettling tortfeasor." *Ondimar*, 555 F.3d at 187. However, "*AmClyde* does not prevent an action for contribution for a settling tortfeasor who obtains, as part of its settlement agreement with the

3

plaintiff, a full release for all parties." *Combo Mar., Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 603 (5th Cir. 2010).

The parties agree that ITC and Aframax settled their dispute and executed the Settlement Agreement. *See* Dkts. 96 at 1; 96, Ex. A; 102 at 3; 102, Ex. A. Subsequently, ITC's claims have been dismissed with prejudice. Dkt. 60. Further, the parties agree that ITC has not participated in the lawsuit since that settlement. *See* Dkts. 96 at 1, 102 at 3. Thus, Aframax's contribution claim is barred unless its settlement agreement with ITC obtains a full release for all parties. *See Combo Mar.*, 615 F.3d at 603.

Aframax provides two arguments for why the *Combo Marine* exception applies to this claim. *See* Dkt. 102. First, Aframax argues that the dismissal of ITC's claims with prejudice serves as a full release of all parties. *Id.* at 4–8. Second, Aframax argues that the Settlement Agreement provides for a full release of all parties. *Id.* at 8–10. The court rejects both arguments.

### 1. Claims Dismissed with Prejudice

Federal Rule of Civil Procedure 14(c) "permits a defendant to implead a third-party defendant for two purposes: (1) to seek contribution or indemnification from the third-party defendant, and (2) to tender the third-party defendant to the plaintiff." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 242 (5th Cir. 2009). Aframax tendered Tug Interests as direct defendants to ITC under Rule 14(c). Dkt. 34 ¶ 19. Subsequently, ITC's claims were dismissed with prejudice. Dkt. 60. Aframax concludes that this dismissal qualifies as a full release of Tug Interests as a properly impleaded party and meets the requirements for the *Combo Marine* exception. Dkt. 102. The court disagrees.

The district court in *Cargill Ferrous Int'l Div. of Cargill, Inc. v. M/V Princess Margherita* stated that "a dismissal with prejudice is a full release, and the released party would have the identical rights as a party that is released by a formal settlement agreement under the *AmClyde* rule." No. CIV. A. 98-3825, 2001 WL 1426678, at *1 (E.D. La. Nov. 13, 2001). Aframax argues that the *Cargill* court's statement supports the conclusion that the dismissal with prejudice of ITC's claims serves as a full release of the claims against Tug Interests to satisfy the *Combo Marine* exception. Dkt. 102 at 6–7. However, *Cargill* was decided before *Combo Marine* and was not analyzing an exception to *AmClyde*. See 2001 WL 1426678, at *2. Instead, the *Cargill* court analyzed whether *AmClyde* applied at all, and its disposition cuts directly against Aframax.[1] *Id.* Thus, the court concludes that *Cargill* is not persuasive authority for Aframax's argument.

For the *Combo Marine* exception to apply, Aframax must have obtained a full release for all parties *as part of its settlement agreement* with ITC. See 615 F.3d at 603. The requirement that the release is secured as part of the settlement agreement is not a mere formality; it is central to the holding in *Combo Marine* because it permits the conclusion that the settling party has paid the entire amount, rather than his proportionate share. *Id* at 604. Therefore, Aframax is not entitled to a contribution claim because ITC subsequently dismissed all claims with prejudice. Instead, Aframax must show that the Settlement Agreement itself provided for a full release for all parties. *See Combo Mar.*, 615 F.3d at 603.

---

[1] The plaintiff in *Cargill* sued three vessels *in rem*—Bossclip, Friendship, and Cyprus—along with an insurer for damages to cargo. 2001 WL 1426678, at *1. Without a settlement agreement, the plaintiff dismissed with prejudice its claims against only Bossclip. *Id.* The remaining defendants filed a third-party complaint seeking contribution and indemnity against Bossclip. *Id.* The *Cargill* court granted Bossclip's motion to dismiss because *AmClyde* applied and barred the contribution and indemnity claims. *Id.* at *1–2.

## 2. Settlement Agreement and Mutual Release

Aframax and ITC executed a Settlement Agreement that states the two parties released each other from all claims. Dkts. 96, Ex. A at 4–8; 102, Ex. A at 4–8. This agreement did not explicitly state that ITC was releasing claims against all parties or Tug Interests. *See* Dkts. 96, Ex. A; 102, Ex. A. Nevertheless, Aframax argues that the Settlement Agreement was a release of all parties and satisfies the *Combo Marine* exception because the language in the confidentiality clause shows the parties contemplated the impact the agreement had on Tug Interests and the parties specified that the released claims were intended to be broadly interpreted. Dkt. 102 at 8–10. The court disagrees.

A settlement agreement is a contract. *E.E.O.C. v. Exxon Corp.*, 202 F.3d 755, 757 (5th Cir. 2000). The Settlement Agreement provides that it is governed by Texas law. Dkts. 96, Ex. A at 9; 102, Ex. A at 9. Interpretation of an unambiguous contract "is a question of law for the court." *Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 7 (Tex. 2014). When construing a written contract, the court's "primary objective is to ascertain the parties' true intentions as expressed in the language they chose." *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015). The court must "examine and consider *the entire writing* . . . all the provisions must be considered with reference to the whole instrument." *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006) (emphasis in original).

The Settlement Agreement's confidentiality clause carves out an exception for disclosures to Tug Interests. Dkts. 96, Ex. A at 15; 102, Ex. A at 15. As Aframax points out, this is evidence that ITC and Aframax considered Tug Interests when drafting the Settlement Agreement. Dkt. 102 at 9. However, this evidence cuts against Aframax's argument. When construing the Settlement

6

Agreement as a whole, a showing that the parties considered Tug Interests in the confidentiality clause means that the absence of language releasing the claims Tug Interests was intentional. *See* Dkts. 96, Ex. A; 102, Ex. A. Therefore, the court concludes that the parties did not intend to make such a release.

The Settlement Agreement defines a "claim" broadly. Dkts. 96, Ex. A at 2; 102, Ex. A at 2. Further, ITC acknowledged that its release of claims was intended to be interpreted broadly. Dkts. 96, Ex. A at 7; 102, Ex. A at 7. From this, Aframax contends that a proper, broad interpretation of the Settlement Agreement shows that ITC and Aframax intended to provide a full release for all parties. Dkt. 102 at 10. Aframax's argument fails because it relies on transferring the Settlement Agreement's broad treatment of claims—*what* is being released—onto the interpretation of *who* is being released. There is no language in the Settlement Agreement indicating that anyone other than ITC or Aframax is released. *See* Dkts. 96, Ex. A; 102, Ex. A. Instead, the Settlement Agreement unambiguously states that ITC is releasing its claims against Aframax, and Aframax is releasing its claims against ITC. Dkts. 96, Ex. A at 4–8; 102, Ex. A at 4–8.

The court concludes that the Settlement Agreement is unambiguous and does not provide for a full release of all parties. Thus, the *Combo Marine* exception does not apply, and the *AmClyde* rule bars Aframax's contribution claim. *See* 615 F.3d at 603. Therefore, Tug Interests have shown that there is no genuine dispute as to any material fact, and they are entitled to partial summary judgment on the contribution claim as a matter of law.

**B. Indemnification Claim**

Aframax's claim for indemnification is based on tort indemnity rather than contractual indemnity. *See* Dkt. 34 ¶¶ 33–35. Tug Interests moves for partial summary judgment on Aframax's claim for tort indemnity, arguing that the *AmClyde* rule applies to this claim as well. Dkt. 96 at 4. Aframax did not respond to Tug Interests' arguments regarding this claim. *See* Dkt. 102. "Failure to respond to a motion will be taken as a representation of no opposition." S.D. Tex. L.R. 7.4. But "[a] motion for summary judgment cannot be granted simply because there is no opposition." *Day v. Wells Fargo Bank Nat'l Ass'n*, 768 F.3d 435, 435 (5th Cir. 2014) (per curiam) (quoting *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985)). "However, a court may grant an unopposed summary judgment motion if the undisputed facts show that the movant is entitled to judgment as a matter of law." *Id.*

The Supreme Court did not address indemnification claims in *AmClyde*. *See* 511 U.S. 202. However, district courts have determined that the *AmClyde* rule also bars claims for tort indemnity. *See Lindsay v. Ports Am. Gulfport, Inc.*, No. CV 16-3054, 2016 WL 6821958, at *3 (E.D. La. Nov. 18, 2016); *Cargill*, 2001 WL 1426678, at *1; *Matter of D.N.H. Towing Co., Inc.*, No. CIV. A. 97-1104, 1998 WL 51835, at *3 (E.D. La. Feb. 5, 1998); *see also Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 833 (5th Cir. 1992) ("the Supreme Court abandoned the archaic concept of tort indemnity and replaced it with the doctrine of comparative fault"). The court finds the reasoning in these cases persuasive.

Thus, the court concludes that when the *AmClyde* rule bars a claim for contribution, it also bars a claim for tort indemnity. The court has already determined that the *AmClyde* rule bars

Aframax's contribution claim. *Supra*, III(A). Therefore, Tug Interests are also entitled to partial summary judgment on the tort indemnity claim as a matter of law.

## IV. CONCLUSION

For the above reasons, the court concludes that there is no genuine dispute of material fact, the *Combo Marine* exception does not apply, and the *AmClyde* rule bars Aframax's claims for contribution and indemnification. Therefore, Tug Interests' motion for partial summary judgment (Dkt. 96) is GRANTED.

Signed at Houston, Texas on March 11, 2022.

_____
Gray H. Miller
Senior United States District Judge